**JAMES RIVER HYDRATE AND SUPPLY COMPANY, Incorporated, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 9433.**

United States Court of Appeals
Fourth Circuit.

Argued June 10, 1964.

Decided Sept. 29, 1964.

Michael Mulroney, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, and Thomas B. Mason, U. S. Atty., on brief), for appellant.

John D. Carr and John H. Young, Roanoke, Va. (Hazlegrove, Shackelford & Carr, Roanoke, Va., on brief), for appellee.

Before HAYNSWORTH and BRYAN, Circuit Judges, and CRAVEN, District. Judge.

HAYNSWORTH, Circuit Judge.

In this action for a refund of income taxes paid, the question is whether the product of the plaintiff's quarry is "metallurgical grade limestone" within the meaning of § 114(b) (4) (A) (iii) of the Internal Revenue Code of 1939 and thus entitled to a fifteen per cent depletion rate.[1] The District Court in a comprehensive opinion held that it was.[2] We affirm for the reasons stated by the District Judge and need add little here to what was there said.

The product of the plaintiff's quarry is dolomite of a very high grade and quality. It consists of something over 54% by weight of calcium carbonates and approximately 44% by weight of magnesium carbonates. Impurities in the material account for a very small percentage. It, in fact, is used in the metallurgical and chemical industries for its. metallurgical and chemical properties.

Section 114(b) (4) (A), in relevant: part, provides depletion allowances as follows:

"(i) in the case of * * * stone. * * * 5 per centum,

"(ii) in the case * * * dolomite, magnesite * * * calcium carbonates, and magnesium carbonates, 10 per centum,

"(iii) in the case of * * * metallurgical grade limestone, chemical grade limestone * * * 15 per centum, * * *."

Everyone agrees that the plaintiff's material is stone within the meaning of

---

1. This action involves the tax years 1952–1953. The 1954 Code contains a different formulation which clearly extends the 15% depletion rate to this product.

2. 221 F.Supp. 824.

the first clause of § 114(b) (4) (A), and that it is dolomite within the meaning of the second clause. Unquestionably of a very high metallurgical grade, the only questions are whether or not it is a limestone as that word with its qualifying words is used in the third clause, and, if so, whether the word "dolomite" in the second clause is more or less specific than the words "metallurgical grade limestone" in the third clause.

To qualify as metallurgical grade limestone, the material must have in the aggregate at least 95% of carbonates. There are some such stones in which the carbonate is principally calcium, while there are stones from other deposits which contain a comparatively substantial proportion of magnesium carbonate. Such material is frequently referred to as dolomitic limestone, though this is a relatively modern development, and, originally, there was no differentiation between material useful for the production of lime on the basis of variations in magnesium content.

In addition to being known as dolomitic limestone, limestones having a comparatively high magnesium carbonate content are known as dolomites. Pure mineral dolomite is 54.35% calcium carbonate and 45.65% magnesium carbonate. Pure material is rarely found in nature, though, as indicated above, the plaintiff's product closely approaches it.

There is substantial evidence that dolomite is only a subclass of limestone. The word is useful in indicating its magnesium content and distinguishing it from other limestones having very high calcium carbonate content, but the evidence indicates that neither historically, geologically nor industrially may dolomite be divorced from the general class of rock known as limestone. There is evidence that "limestone" is sometimes used exclusively to indicate stones having very

high calcium carbonate content as contrasted with dolomitic limestones, but we accept the testimony, which supports the findings of the District Court, that "limestone" has a broader meaning which encompasses both subclasses.

In 1950, the National Lime Association sought higher depletion allowances for metallurgical and chemical grade limestones, including dolomite. In preparation for this effort, it had employed a Dr. Kenneth K. Landes, who prepared a summary of the reserves of high grade limestone and presented a report to the Committee on Ways and Means of the House of Representatives. He defined his terms and, as used in his survey, report and recommendation, the terms "metallurgical grade limestone" and "chemical grade limestone" included dolomite of the requisite purity. The Committee adopted his language and his suggestion, but the Senate did nothing about the matter in 1950. In 1951, however, the House of Representatives adopted an amendment inserting into the Bill a provision which is now clause (iii) of § 114(b) (4) (A). At that time clause (ii) contained no reference to dolomites or to calcium carbonate or to magnesium carbonates. The Senate Finance Committee, however, inserted the word "dolomite" in clause (ii), and, by a floor amendment, the words "calcium carbonates" and "magnesium carbonates" were introduced into clause (ii). The Conference Committee adopted the Senate version,[3] and thus clause (ii) came to read as it did during the years 1952 and 1953.

From the foregoing, we think the District Judge was quite correct in his conclusion that the terms "metallurgical grade limestone" and "chemical grade limestone" in clause (iii) included dolomites of the requisite purity, for that was clearly the basis of the presentation of the request to the Congress and the basis

3. This is true as far as the language is concerned. The Senate version provided only a ten per cent depletion rate for chemical and metallurgical grade limestone; however, in the Conference Com-

mittee, limestones possessing these properties were restored to the fifteen per cent category. This Conference version became the law.

upon which clause (iii) came into the Section.

We also are of the opinion that the word "dolomite," as used in clause (ii), is neither more specific nor more restricted than the words "metallurgical grade limestone" as used in clause (iii). Of course, it is a more restrictive word than the word "limestone" unmodified, for dolomite is a subclass of limestone, but "metallurgical grade limestone," defined to include dolomite of requisite purity, constitutes a very small proportion of minable limestone or minable dolomite. Limestones of both subclasses which can meet the grade requirements of clause (iii) are infinitely less plentiful than either of the general subclasses of limestone.

It thus appears that the obvious purpose of inserting the word "dolomite" into clause (ii) was to provide a 10% depletion allowance for that material which was of insufficient purity to qualify as metallurgical grade. Otherwise it would have been entitled to depletion only as "stone" at a five per cent rate. This conclusion is buttressed by the insertion on the Senate floor of the words "calcium carbonates" and "magnesium carbonates" into clause (ii). Collectively, the words "dolomite," "calcium carbonates" and "magnesium carbonates" encompass all of the limestones. If the insertion of one of those words into clause (ii) was intended to withdraw a subclass of limestone from clause (iii) though meeting the grade specifications, then the insertion of the several words encompassing all of the limestones should be held to have withdrawn all limestone from clause (iii). Obviously, this was not the Congressional purpose.

■ We, therefore, agree with the District Judge that the words "dolomite," "calcium carbonates" and "magnesium carbonates," as used in clause (ii) were intended to encompass those materials only if they did not meet the grade requirements of clause (iii). Approximately 99% of the limestones would thus be allowed depletion under clause (ii); approximately 1%, meeting the metal-

lurgical and chemical grade requirements of clause (iii), would be entitled to depletion allowance at the rate of 15%. That was the apparent Congressional purpose.

■ The District Court in its opinion considered and discussed prior judicial opinions bearing upon the question and the reasons for its conclusion as to the proper construction of the statute in light of the evidence in this case. We need not repeat all of that discussion here, but, approvingly, refer the reader to it. The essential difference between this case and earlier ones discussed by the District Judge, however, is the presence here of compelling testimony that dolomite, historically and geologically, is one of two subclasses of limestone, and, when of the requisite purity, is metallurgical or chemical grade limestone as those terms were understood by the Congress in 1951 and by industrial engineers experienced in that field. The Court's conclusions followed naturally from its findings, which, in this case, have a solid foundation in the evidence.

Affirmed.